UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MONKEY RIDGE, LLC, DIPPY RIDGE, INC., and STEMILT AG SERVICES, LLC,

Plaintiffs,

v.

UNIGARD INSURANCE COMPANY, a Wisconsin corporation,

Defendant.

NO: 2:16-CV-0213-TOR

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are Plaintiffs' Motion for Summary Judgment (ECF No. 8) and Defendant's Motion for Leave to File a Sur-Reply (ECF No. 23). These matters were heard with oral argument on October 5, 2016, in Spokane, Washington. Kristin M. Ferrera appeared on behalf of Plaintiffs Monkey Ridge, LLC, Dippy Ridge, Inc., and Stemilt AG Services, LLC. Matthew S. Adams appeared on behalf of Defendant Unigard Insurance Company. The Court—

having reviewed the briefing, the record, and files therein and heard from counsel—is fully informed.

**BACKGROUND**

This action concerns Defendant Unigard Insurance Company's refusal to defend and indemnify Plaintiff Monkey Ridge, LLC in a state court action. On May 10, 2016, Plaintiffs filed a Complaint for Declaratory Judgment and Reformation against Defendant in the Washington State Superior Court for Chelan County styled, *Monkey Ridge, LLC, et al. v. Unigard Insurance Company*, case no. 16-2-03398-7. ECF No. 1-2. Defendant timely removed the action to this Court by invoking diversity jurisdiction under 28 U.S.C. § 1332(a)(1). ECF No. 2.

Plaintiffs move for summary judgment to reform the insurance policy or a determination that Defendant has a duty to defend and indemnify Plaintiff Monkey Ridge, LLC from the claims asserted against it in *Davis v. Chelan County, et al.*, case no. 15-2-01273-4, pending before the Washington State Superior Court for Grant County (the "*Davis* Action").[1] ECF No. 8 at 1.

//

[1] The plaintiffs in the *Davis* Action allege that Monkey Ridge, LLC improperly collected and diverted water, which caused waste and injury to plaintiffs' property. *See* ECF No. 1-2 at 3.

**FACTS**

Plaintiff Stemilt Ag Services, LLC ("Stemilt") operates and manages various orchards in eastern Washington, including the property commonly known as the "Over the Ridge Property" for its owner, Plaintiff Monkey Ridge, LLC ("Monkey Ridge").[2] ECF No. 11 at ¶¶ 1, 4, 6; ECF No. 21 at ¶ 4; *see* ECF No. 18 at ¶¶ 1, 4, 6 (undisputed). Zimmerman Pond is a small body of water located on the Over the Ridge Property. ECF No. 11 at ¶ 5; *see* ECF No. 18 at ¶ 5 (undisputed).

Monkey Ridge is a Washington limited liability company and its sole "member/owner" is Plaintiff Dippy Ridge, Inc. ("Dippy Ridge"). ECF No. 11 at ¶ 2; *see* ECF No. 18 at ¶ 2 (undisputed). Pursuant to a Management Agreement between Stemilt and Monkey Ridge, Stemilt agreed to "use its best efforts to obtain comprehensive general liability insurance for the protection 'of the Orchards and the Owner….'" ECF No. 18 at ¶¶ 7-8; *see also* ECF No. 11 at ¶¶ 7-8.

---

[2] The Over the Ridge Property is located in Sections 4 and 9, Township 21 North, Range 20 E.W.M., Washington Tax Parcel No. 212004420100 in Chelan County, Washington. *Id.* Over the Ridge, LLC owned the Over the Ridge Property prior to Monkey Ridge. *Id.* Monkey Ridge is the successor in interest to Over the Ridge, LLC by merger. ECF No. 11 at ¶ 3; *see* ECF No. 18 at ¶ 3 (undisputed).

Defendant issued a Multi-Farm Commercial Package Policy (number MF002908) to Stemilt, effective January 1, 2015 to January 1, 2016 (the "Primary Policy"). ECF No. 16 at ¶ 2. The Primary Policy serves several functions as it "contains a commercial property coverage part, a farm property coverage part, a commercial inland marine coverage part, a commercial general liability occurrence coverage part [. . .], and a business auto coverage part." ECF No. 16 at ¶ 4.

A portion of the Primary Policy, referred to as the Commercial General Insurance Policy ("CGL Policy"), identifies Stemilt as a named insured and Dippy Ridge as an additional insured, among other entities. ECF No. 11 at ¶¶ 10-11; *see* ECF No. 18 at ¶¶ 10-11 (undisputed). The Over the Ridge Property is listed in the CGL Policy as location numbers 035, 048, and 078 and includes the "Zimmerman Pond." ECF No. 11 at ¶¶ 13-14; ECF No. 18 at ¶¶ 13-14. Defendant also issued a separate Commercial Umbrella Liability Insurance Policy (the "Umbrella Policy") to named insured, Stemilt, and additional insured, Dippy Ridge, among others. ECF No. 11 at ¶¶ 18, 22; *see* ECF No. 18 at ¶¶ 18, 22 (undisputed).

Defendant calculated the premiums due on the CGL Policy part of the Primary Policy and the Umbrella Policy based on the number of properties identified and the acreage of those properties. ECF No. 11 at ¶ 32; *see* ECF Nos. 16 at ¶13 and 18 at ¶ 32. Stemilt paid additional premiums to insure the Over the

Ridge Property under the Farm Property Coverage Part Coverage E and Coverage G of the Primary Policy. *See* ECF No. 11 at ¶ 30; ECF No. 18 at 30.

Emails located in Defendant's underwriting records suggest that Dippy Ridge may have been a named insured and referenced on the policy in 2005 as the owner of the Over the Ridge Property, as well as several others. ECF No. 22-1 (Ex. A). Yet, Dippy Ridge never owned the Over the Ridge Property. *See* ECF No. 10-1 at 8-9. The same records suggest that between 2007 and 2008, Over the Ridge, LLC may have been a named insured and identified as the Zimmerman Pond owner, and Monkey Ridge may have been a named insured and identified as the owner of a separate property, Ice Harbor Ranches.[3] ECF No. 22-1 at Exs. B and C. Over the Ridge, LLC owned the Over the Ridge Property until Monkey Ridge took title on June 4, 2008. *See* ECF No. 10-1 at 8.

Despite that Over the Ridge, LLC merged with Monkey Ridge on July 11, 2002 (ECF No. 10-1 at 7), and that Monkey Ridge owned the Over the Ridge Property as of June 4, 2008, there is no evidence that Monkey Ridge was ever listed as an additional insured on the Primary Policy because of its ownership of the Over the Ridge Property. *See* ECF Nos. 10-1 at 7; 15 at ¶ 3. Instead, Monkey

---

[3] Over the Ridge, LLC is inconsistently identified as "Over the Ridge, A Corporation" and "Over the Ridge." *Id.*

Ridge's sole member, Dippy Ridge, is a named insured in the Primary Policy at all times relevant to this dispute. ECF Nos. 11 at ¶ 11; 22-1 (Ex. A).

The parties disagree as to whether Plaintiffs intended to insure Monkey Ridge against third-party liability and whether Stemilt notified Defendant about the Over the Ridge Property's ownership change. Plaintiffs assert that Stemilt intended the owner of the Over the Ridge Property to be covered by the CGL Policy, and expressed that intent to Wells Fargo Insurance Services U.S.A., Inc. ("Wells Fargo Insurance"), the insurance agency that procured the CGL Policy from Defendant. ECF No. 11 at ¶ 12, 27-28; ECF No. 9 at ¶ 11; ECF No. 21 at ¶ 6.

According to Plaintiffs, on October 19, 2012, Wells Fargo Insurance notified Greg Rowe, senior accountant at Stemilt Growers, LLC, that Dippy Ridge and Monkey Ridge were not listed as additional insureds on a certificate of insurance provided by Wells Fargo Insurance to Bank of America, which was required to satisfy loan conditions for an unrelated loan. ECF No. 21 at ¶¶ 2, 7-9; ECF No. 21-1 (Exs. A and B). Wells Fargo Insurance representative, Yvette Davis, emailed Greg Rowe to determine whether to add Monkey Ridge as a named insured. *See id.*; ECF No. 21-1 (Ex. A). On October 19, 2012, Mr. Rowe explained the nature of the relationship between Monkey Ridge and Dippy Ridge to Ms. Davis. ECF Nos. 21-1 (Ex. A) ("Stemilt Ag Services manages orchards for Dippy Ridge Inc. Monkey Ridge LLC is a subsidiary of Dippy Ridge Inc. and some of the orchards

are titled under Monkey Ridge LLC."); 21 at ¶¶ 6-7. Ms. Davis offered to "put Dippy Ridge, Inc. and subsidiary Monkey Ridge LLC" on the certificate of insurance and provided a revised certificate to Bank of America to reflect that change. ECF No. 21-1 (Ex. A). Based on these communications, Stemilt's senior accountant testified that he relied on Wells Fargo Insurance's representation that Monkey Ridge was covered under the CGL Policy as a subsidiary of Dippy Ridge. *See id.*; ECF No. 21 at ¶ 8.

However, Defendant denies that Stemilt ever communicated an intent to insure Monkey Ridge to Defendant. *See* ECF No. 18 at ¶¶ 12, 26-28; ECF No. 16 at ¶ 9. Defendant also disputes that Wells Fargo Insurance is its "insurance agent." *Id.* Rather, Defendant asserts that the policies were procured on Stemilt Ag Services' behalf by Wells Fargo Insurance, an insurance brokerage. ECF No. 18 at ¶ 12.

## DISCUSSION

### A. Standard of Review

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the

non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2); *see also* L.R. 56.1(d).

A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and alterations omitted); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party is only entitled to proceed to trial if it presents sufficient, probative evidence supporting the claimed factual dispute, rather than resting on mere allegations).

Finally, in ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to

the non-moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007). *See also Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) ("[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." (internal quotation marks and brackets omitted)).

**B. Washington Law on Reformation**

In Washington, "[t]he rules of law governing the reformation of written agreements are applicable to the reformation of an insurance policy." *Rocky Mountain Fire & Cas. Co. v. Rose*, 62 Wash.2d 896, 902 (1963) (citation omitted). It is within a court's equitable province to reform a contract where there is clear evidence of either fraud or a mutual mistake. *Id.* As to the latter, "[i]f the intention of the parties is identical at the time of the transaction, and the written agreement does not express that intention, then a mutual mistake has occurred." *Id.* at 902-03 (quoting *Tenco, Inc. v. Manning*, 59 Wash.2d 479, 483 (1962)). However, a court must also determine that the mutual mistake concerns a material fact. *Simonson v. Fendell*, 101 Wash.2d 88, 92 (1984) (citations omitted). A mistake is material if the contract would not have been entered into had the parties known of the mistake prior to entering the contract. *Id.*

//

//

**1. Policy Purpose and Inadvertent Error**

Plaintiffs articulate two distinct theories. First, because a portion of the Primary Policy insures the Over the Ridge Property, Plaintiffs essentially argue that it is axiomatic that its owner should have been listed as an additional insured in the CGL Policy in accord with the purpose of the CGL Policy and Washington precedent.[4] *See* ECF No. 8 at 8-13. Faulting Plaintiffs for focusing on cases involving first-party insurance policies, Defendant argues that Plaintiffs failed to cite any authority related to third-party liability insurance policies where a named party is mistakenly omitted, given that Monkey Ridge seeks third-party liability coverage under the CGL Policy regarding the *Davis* Action.[5] ECF No. 15 at 2.

---

[4] Plaintiffs also argue that Washington law supports finding in favor of an insured where a policy is subject to two interpretations, or where there exists an ambiguity. ECF No. 8 at 13. The Court disagrees. Whether the policy should be reformed to insure Monkey Ridge does not create a policy provision ambiguity subject to interpretation. *McDonald Indus., Inc., v. Rollins Leasing Corp*., 95 Wash.2d 909, 913 (1981) (analyzing an ambiguity as to the meaning of a policy clause).

[5] Defendant also argues that holdings related to first-party insurance issues are inapplicable to third-party insurance holdings. *Id.* at 8-9. However, and as

As an initial matter, insurance policies must be analyzed as a whole and afforded a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 665-66 (2000). It is undisputed that the Primary Policy is multi-faceted "contain[ing] a commercial property coverage part, a farm property coverage part, a commercial inland marine coverage part, a commercial general liability occurrence coverage part [. . .], and a business auto coverage part." ECF No. 16 at ¶ 4. Accordingly, the Court analyzes the Primary Policy as a whole, rather than in fragmentary isolation. 142 Wash.2d at 665-66.

Plaintiffs offer ample authority as support that when an insurer receives payment for insuring a property, and there is a mistake as to the identification of the named insured, the insurer may not avoid the policy due to "a mere technicality." *Metropolitan Mortgage & Sec. Co. v. Reliable Ins. Co.*, 64 Wash.2d 98, 102 (1964) (fire insurance policy where the intent of the contracting parties did not reflect the real party in interest). Plaintiffs also cite at least one case where a court reformed a third-party liability coverage policy to conform to the parties' true intent. *See, e.g.*, *Hanover Ins. Co. v. Publix Market, Inc.*, 198 So. 2d 346, 348 (Fla.

---

Plaintiffs correctly highlight, Defendant relies on a misplaced distinction narrowly limited to causation analyses. *Id.*

Dist. Ct. App. 1967) (third-party liability policy reformed to change the misidentification of an entity to reflect its true identity).

Against that backdrop, the Court finds that although it is undisputed that Stemilt agreed to "use its best efforts to obtain comprehensive general liability insurance for the protection of the Orchards and the Owner" and that Stemilt's management of the Over the Ridge Property remained the same, the record lacks credible evidence that Stemilt did, in fact, seek liability protection for the Over the Ridge Property's owner. *See* ECF No. 18 at ¶¶ 7-8 (internal quotation omitted). In other words, the Court finds that the record is undeveloped as to whether Stemilt actually sought third-party liability protection for the owner of the Over the Ridge Property.

Viewing the evidence in the light most favorable to Defendant, the evidence shows—*at best*—that Dippy Ridge is listed as one of many additional insureds, and the Over the Ridge Property is listed as an insured property and on the CGL Policy schedule of locations. Plaintiffs have not shown that Dippy Ridge was included as an additional insured because it is the ostensible owner of the Over the Ridge Property in conformity with the purpose of the Primary Policy, or because it is the sole member or owner of Monkey Ridge or rather, because it had an interest in other property listed in the schedule of locations. *See Truck Ins. Exchange v. Hanson*, 42 Wash.2d 256, 257–59 (1953) (reasoning that a party may obtain

liability insurance despite having no financial interest in property). The mere existence of Dippy Ridge as one of several named insureds, offered to support Plaintiffs' position that Monkey Ridge should have been listed in its stead, is insufficient at this stage to support a summary judgment finding in favor of Plaintiffs. *Anderson*, 477 U.S. at 252. There must be evidence on which a jury could reasonably find for Plaintiffs, not mere guesswork. *Id.*

Plaintiffs perfunctorily argue that the omission of Monkey Ridge as a named insured appears to be "accidental" because "when Monkey Ridge acquired the Over the Ridge Orchard from Over the Ridge, LLC, Monkey Ridge was accidentally omitted as a Named Insured under the CGL Policy." ECF No. 22 at 3. The Court finds no evidence that Monkey Ridge was accidentally omitted, or that Dippy Ridge was inadvertently listed in its place. Although Plaintiffs offer evidence to infer that Dippy Ridge may have been a named insured in 2005 identified as the owner of Over the Ridge, and in 2007-2008 Over the Ridge, a Corporation may have been a named insured identified as the owner of Zimmerman Pond, in ruling on a motion for summary judgment, the Court must draw all justifiable inferences in Defendant's favor. *See Tolan*, 134 S. Ct. at 1863. The record does not establish which entities were insured against third-party liability from time to time and for what purpose. Moreover the record does not

clearly evince each party's intent "at the time of the transaction" or at any point thereafter. *Rocky Mountain*, 62 Wash.2d at 902-03.

**2. The Parties' Intent**

Second, Plaintiffs argue that reformation is appropriate because Wells Fargo Insurance was informed as of October 19, 2012, of the corporate hierarchy between Monkey Ridge and Dippy Ridge, and that Monkey Ridge owns some of the orchards that Stemilt manages. *See* ECF Nos. 21-1 (Ex. A); 21 at ¶¶ 6-7. Plaintiffs argue that Wells Fargo Insurance inquired whether to add Monkey Ridge as a named insured to the policy and offered to "put Dippy Ridge, Inc. and subsidiary Monkey Ridge LLC" on a certificate of insurance to provide to third party Bank of America. *See* ECF No. 21-1 (Ex. A). Stemilt's representative confirmed that should "do the trick." *Id.*

Stemilt's communications with Wells Fargo Insurance formed the basis for its belief that Monkey Ridge was covered under the CGL Policy as a subsidiary of Dippy Ridge (at least as of October 19, 2012). *See id.*; ECF No. 21 at ¶ 8. Defendant vehemently disagrees and contends that it "never received a request to add Monkey Ridge as a Named or Additional Insured to either the Primary Policy or to the Umbrella Policy." ECF No. 16 at ¶ 9.

In *Rocky Mountain*, the Washington Supreme Court upheld a trial court's reformation of an auto insurance contract where the lower court determined that

the parties intended the policy cover both a father and daughter. *Rocky Mountain*, 62 Wash.2d at 903. The trial court relied on the intention of an agent and the father in contracting for the policy as evidenced by the agent's representation that both were protected by the policy on more than one occasion. *Id.* In upholding the trial court's decision, the Washington Supreme Court reasoned that it is well established "that the knowledge which an agent acquires while acting as such and within the scope of his authority is imputed to his principal and that an insurance company is bound by the acts, contracts, or representations of its agent, which are within the scope of his apparent authority." *Id.* (citations omitted).

Unlike *Rocky Mountain*, and although the Court acknowledges that "[a]n insurance company is bound by all acts, contracts or representations of its agent which are within the scope of his apparent authority," the Court finds that there is a genuine issue of material fact as to the agency relationship with Wells Fargo Insurance. The Court further concludes that based on the current record, the evidence does not support a finding that the information Stemilt relayed to Wells Fargo Insurance is necessarily imputed to Defendant. *See Fanning v. Guardian Life Ins. Co.*, 59 Wash.2d 101, 104 (1961) (upholding apparent authority jury instruction). Conversely, the record demonstrates that the policies were procured on Stemilt Ag Services' behalf by Wells Fargo Insurance, not directly from Defendant. ECF No. 18 at ¶ 12. The necessary information regarding the agency

relationship between Wells Fargo Insurance and Defendant is undeveloped at this time.

**CONCLUSION**

The Court finds that Plaintiffs have not met their burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.* 477 U.S. at 323 (1986). The Court concludes that the incomplete evidence as to the parties' mutual intent at the time of the transaction and agency relationship precludes summary judgment at this time.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Summary Judgment (ECF No. 41) is **DENIED**.
2. Defendant's Motion for Leave to File Sur-Reply (ECF No. 23) is **GRANTED**. Defendant's Sur-Reply (ECF No. 23-1) is deemed filed as presented.
3. The District Court Clerk is directed to enter this Order and provide copies to counsel.

**DATED** October 6, 2016.




THOMAS O. RICE
Chief United States District Judge